IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S,<br>LONDON AND OTHER INSURERS<br>SUBSCRIBING TO POLICY<br>NO. SUA FEO 2287-2503<br><br>          **Plaintiffs,**<br>v.<br><br>RODSOL INVESTMENT CORP.,<br>BOWARD APARTMENTS VI LLC,<br>FIRST AMERICAN TITLE<br>INSURANCE COMPANY,<br>NEW AMERICAN FUNDING, LLC,<br>MARGARET JAMINEZ,<br>ALL STAR TITLE LLC,<br>and VILMA FRAGA<br><br>          **Defendants.** | Case No.: |

**COMPLAINT FOR INTERPLEADER**

Plaintiffs, Certain Underwriters at Lloyd's, London and Other Insurers Subscribing to Policy No. SUA FEO 2287-2503 ("Underwriters") by and through their undersigned counsel, hereby file this Complaint for Interpleader based on competing insurance claims, and in support thereof state:

**NATURE OF ACTION**

1. This is a statutory interpleader action brought to resolve competing and potentially adverse claims to a single, limited fund of a $25,000 applicable sublimit under a Coverage for Theft of Funds Matter Subject to Sublimit Endorsement (the "Theft of Funds Endorsement") contained in a Title Agents, Abstractors and Escrow Agents Professional Liability Insurance Policy, Policy No. SUA FEO 2287-2503 (the "Policy"), issued to All Star Title LLC ("All Star Title"). A copy of the Policy is attached hereto and incorporated herein as **Exhibit 1**.

2. Underwriters face the risk of multiple liability judgments and inconsistent obligations because multiple parties have asserted, or may assert, claims seeking "Damages"[1] that allegedly fall within the Theft of Funds Endorsement's $25,000 sublimit (the "Interpleader Funds").

3. Underwriters do not know, and cannot determine without judicial intervention, which Defendant(s), if any, are entitled to all or any portion of the Interpleader Funds. This is compounded by the fact that All Star Title to date has not assisted or cooperated with Underwriters with respect to the investigation, evaluation, and/or defense of any of the claims made against it.

4. Underwriters therefore seek to deposit the Interpleader Funds into the Court's registry and obtain an order requiring Defendants seeking "Damages" from All Star Title that could be potentially covered by the Policy to litigate amongst themselves their entitlement, if any, to the Interpleader Funds, while discharging Underwriters from further liability with respect to those funds and enjoining further proceedings against Underwriters as to the Interpleader Funds.

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction under 28 U.S.C. § 1335.

6. This action involves a sum of $25,000, and there are two or more adverse claimants of diverse citizenship, as defined in § 1335(a)(1), who claim or may claim entitlement to the Interpleader Funds.

7. Venue is proper in this District under 28 U.S.C. § 1397 because one or more Defendants reside in this District and/or the events giving rise to the competing claims occurred in this District, including real estate transaction(s) and litigation in Miami-Dade County, Florida.

---

[1] Terms in quotations are defined in the Policy.

## PARTIES

8. Plaintiffs are Certain Underwriters at Lloyd's, London and Other Insurers Subscribing to Policy No. SUA FEO 2287-2503.

9. Defendant All Star Title is the Policy's Named Insured. All Star Title is a Florida limited liability company with its principal place of business in Miami-Dade County, Florida.

10. Defendant Margaret Jimenez ("Jimenez") is an individual who, upon information and belief, resides in Miami-Dade County, Florida. Jimenez is included as a Defendant to the extent she claims, or may claim, entitlement to coverage benefits or payments from the Interpleader Funds, including defense-related payments characterized as "Claims Expenses," or otherwise asserts rights adverse to other claimants with respect to the Interpleader Funds.

11. Defendant Rodsol Investment Corp. ("Rodsol") is, on information and belief, a Florida corporation with its principal place of business in Miami-Dade County, Florida. Rodsol has asserted claims against All Star Title and Ms. Jimenez in a Florida state-court action described below and seeks monetary relief based on alleged mishandling and/or misappropriation of escrow funds.

12. Defendant Broward Apartments VI LLC ("Broward Apartments") is, on information and belief, a Florida limited liability company with its principal place of business in Miami-Dade County, Florida. Broward Apartments has asserted a demand and filed suit described below against All Star Title and Ms. Jimenez based on alleged mishandling and/or misappropriation of mortgage payoff funds.

13. Defendant Vilma Fraga ("Fraga") is an individual who, upon information and belief, resides in Miami-Dade County, Florida. Fraga filed a motion to intervene in the Broward

3

Apartments lawsuit described below and claims damages allegedly arising from the same transaction.

14. Defendant New American Funding, LLC ("NAFL") is, on information and belief, a California based limited liability company with its principal place of business in Tustin, California. NAFL asserted a written demand for monetary relief described below and alleges losses associated with the same real estate closing referenced by Broward Apartments and Fraga.

15. Defendant First American Title Insurance Company ("FATIC") is, on information and belief, a Nebraska corporation with its principal place of business in Santa Ana, California, and is an authorized Florida title insurance underwriter. FATIC filed a lawsuit described below against All Star Title, Ms. Jimenez, and Ocean Bank, alleging damages and seeking injunctive and other relief tied to All Star Title's alleged diversion and misappropriation of escrow funds, including allegations overlapping with matters asserted by other Defendants.

## THE POLICY

16. The Policy issued to All Star Title is a claims-made-and-reported policy for the "Policy Period" of June 23, 2025 to June 23, 2026. The Policy contains a $1,000,000 per "Claim" and annual aggregate limit of liability, subject to a $10,000 per "Claim" deductible. The limit of liability shall be reduced and may be exhausted by amounts incurred as "Claims Expenses," and "Claims Expenses" shall be applied to the deductible. Underwriters have a duty to defend covered "Claims" pursuant to the Policy.

17. The Policy includes the "Theft of Funds Endorsement," which includes a sublimit of $25,000 and provides, in relevant part, as follows:

> A. Section II. is amended to include the following definition:
>
> > "Theft of Funds Matter" means a "Claim" by reason of a "Wrongful Act" in the performance of or failure to perform

        "Professional Services" by any "Insured" or by anyone whom an "Insured" is legally responsible directly or indirectly related to, arising out of, or based upon:

    a.    any alleged and/or actual comingling, theft, misappropriation, improper use of, or embezzlement of funds by any "Insured";

    b.    any "Insured's" inability or failure to safeguard funds from an inappropriate use, including but not limited to comingling, theft, misappropriation, knowingly improper use of or embezzlement of funds; or

    c.    the failure of an "Insured" to perform a "Professional Service" in relation to or arising out of a transaction involving the comingling, theft, misappropriation, knowingly improper use of or embezzlement of funds by any "Insured"

B.    Section I. is amended to include the following Insuring Agreement:

We will pay on behalf of an "Insured" those sums in excess of the deductible, subject to the Sub-Limit Amount stated in Paragraph C of this Endorsement, that the "Insured" becomes legally obligated to pay as "Damages" and "Claims Expenses" by reason of a "Theft of Funds Matter" provided:

1.    The "Theft of Funds Matter" arises out of a "Wrongful Act" committed on or subsequent to the "Retroactive Date" and before the end of the "Policy Period" and is reported to Underwriters during the "Policy Period"; and

2.    The "Theft of Funds Matter" commences against any "Insured" on or after the effective date and prior to the expiration if the "Policy Period" or Extended Reporting Period."

C.    The Sub-Limit Amount is **$25,000,** which amount shall be the maximum aggregate limit of liability we will pay pursuant to this Endorsement, regardless of the number of "Claims" by reason of a "Theft of Funds Matter" or the number of "Insureds." The Deductible set forth in the Declarations shall apply to any coverage provided by this Endorsement. Any payments made under this Endorsement will be included in the Limit of Liability and not in addition thereto.

D.    The Sub-Limit Amount stated in Paragraph C above shall apply to limit any coverage under this Policy for a "Theft of Funds Matter" which would otherwise be provided absent this Endorsement.

18. Section IV.2. of the Policy further provides that:

> All "Claims" alleging, based upon, arising out of or attributable to the same "Wrongful Act" and "Related Wrongful Acts" shall be deemed to be a single "Claim" regardless of whether made against one or more "Insured" and such "Claim" shall be deemed first made on the date the earliest of such "Claims" is first made even if such date is before the "Policy Period". Two or more "Claims" or suits arising out of the same, related or continuous "Professional Services" shall be considered a single "Claim".

## FACTUAL BACKGROUND

19. This interpleader action arises from a series of demands, lawsuits, and asserted claims made against All Star Title and its alleged principal, Margaret Jimenez, all of which are premised on allegations that All Star Title mishandled, failed to safeguard, diverted, or misappropriated escrow or mortgage payoff funds in connection with separate real estate transactions. As discussed below, the demands, lawsuits, and asserted claims made against All Star Title constitute a single "Claim" under the Policy.

20. Each Defendant seeks substantial monetary relief exceeding the $25,000 maximum aggregate sublimit available for the "Claim" under the Policy's Coverage for Theft of Funds Matter Subject to Sublimit Endorsement.

21. The Policy contains a single $25,000 sublimit, which represents the entire universe of potentially available insurance proceeds applicable to the "Claim" for both "Claim Expenses" and "Damages," regardless of the number of claims, claimants, insureds, transactions, or lawsuits. Defendants' individual claims asserted against All Star Title and Ms. Jimenez are collectively irreconcilable given the finite size of the Interpleader Funds available to resolve the "Claim."

22. On or about October 2, 2025, Broward Apartments, through counsel, sent a written demand to All Star Title seeking $295,758.76. Broward Apartments alleges that All Star Title was

6

engaged as escrow agent in connection with a residential real estate closing involving property located at 2210 NW 5th Street, Fort Lauderdale, Florida, and that All Star Title failed to properly wire mortgage payoff funds, instead unlawfully withholding, diverting, or misappropriating those funds. Underwriters were notified of this demand on October 7, 2025.

23. On or about October 22, 2025, Broward Apartments filed suit against All Star Title and Ms. Jimenez in the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida, Case No. 234249156 (the "Broward Apartments Lawsuit"). The Complaint asserts claims for civil theft, conversion, FDUTPA violations, unjust enrichment, breach of fiduciary duty, and alter ego liability, and seeks damages of $295,758.76, together with interest, attorneys' fees, costs, and other relief.

24. On or about November 17, 2025, Underwriters were notified by counsel for Fraga, the buyer in the Broward Apartments transaction, that Fraga had filed a motion to intervene in the Broward Apartments Lawsuit, and intended to seek recovery from Underwriters under the Policy in relation to the claim asserted (the "Fraga Demand"). Fraga alleges that she wired $17,090.70 to All Star Title and that her lender, NAFL, wired additional funds, resulting in total wired amounts of $349,823.43 in connection with the closing. Fraga alleges that the funds were wrongfully withheld, diverted, or misappropriated and seeks damages, attorneys' fees, and other relief.

25. On or about November 21, 2025, Underwriters became aware that FATIC had filed suit against All Star Title, Ms. Jimenez, and Ocean Bank in the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida, Case No. 234432720 (the "FATIC Lawsuit"). In the FATIC Lawsuit, FATIC alleges that All Star Title and Ms. Jimenez engaged in a broader scheme to divert and misappropriate escrow funds exceeding $300,000, including funds allegedly connected to both the Rodsol transaction and the Broward Apartments transaction. FATIC asserts

claims for breach of contract, indemnity, conversion, imposition of a constructive trust, and injunctive relief, and seeks damages, equitable relief, and attorneys' fees.

26. On or about November 30, 2025, Underwriters became aware of a lawsuit filed by Rodsol against All Star Title and Ms. Jimenez in the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida, Case No. 231394639 (the "Rodsol Lawsuit"). In the Rodsol Lawsuit, Rodsol asserts claims for civil theft, conversion, FDUTPA violations, unjust enrichment, breach of fiduciary duty, and alter ego liability, and seeks compensatory damages, attorneys' fees, costs, and other relief.

27. On or about December 31, 2025, Underwriters received a written demand from NAFL asserting that NAFL incurred losses as a result of All Star Title's conduct in the same closing transaction (the "NAFL Demand"). NAFL demands recovery of $9,180.00 in attorneys' fees allegedly incurred to correct title and recording issues and secure its first-priority lien position.

28. Underwriters were first notified of the Broward Apartments demand against All Star Title in October 2025. However, Underwriters were unaware of any competing claims against All Star Title as to any coverage that might be afforded under the Policy until November 17, 2025, when they became aware, through counsel for Fraga, of the Fraga Demand.

29. Despite numerous attempts since the various matters were reported, Underwriters have been unable to make contact with All Star Title in order to investigate, evaluate, and/or defend against Defendants' claims.

30. On information and belief, each of the Defendants contend that their individual claim is legitimate and compensable under the Policy.

31. Each of the Defendants seek "Damages" that would, if paid, exhaust or substantially diminish the Policy's single $25,000 sublimit, to the exclusion of all other Defendants' claims.

32. Payment of any "Claims Expenses" All Star Title incurs will erode the Policy's $25,000 sublimit, and any defense Underwriters affords on All Star Title's behalf against Defendants' individual claims will reduce the recovery available to Defendants under the Policy.

33. Given the lack of cooperation and assistance by All Star Title, Underwriters are also unable to ascertain which Defendant, if any, is necessarily entitled to payment under the Policy. While Underwriters continue to expressly reserve all rights and defenses concerning coverage, their duty to defend All Star Title, allocation, deductibles, exclusions, conditions, cooperation, and all other Policy terms as to each of Defendants' claims, Underwriters do not dispute that indemnity coverage may be triggered for the "Claim" in relation to the $25,000 sublimit under the Policy pursuant to the Theft of Funds Endorsement if All Star Title is found liable to Defendants. In light of the potential for indemnity coverage for the "Claim," Underwriters disclaim any continued interest in the Interpleader Funds after appropriately distributed by this Court to the various Defendants.

34. Accordingly, Underwriters bring this interpleader action as a procedural safe harbor under 28 U.S.C. § 1335 and Fla. Stat. § 624.155 within the 90-day period afforded by statute because they cannot, without judicial intervention, safely determine which Defendants are entitled to all or any portion of the Interpleader Funds.

35. Absent interpleader, Underwriters face a substantial risk of multiple liability, inconsistent judicial determinations, duplicative litigation in multiple forums, and irreparable prejudice arising from unilateral or preferential depletion of a finite fund. Underwriters therefore

seek to deposit the Interpleader Funds into the registry of the Court and allow Defendants to litigate among themselves their respective rights to the Interpleader Funds.

## COUNT I – STATUTORY INTERPLEADER

36. Underwriters reallege paragraphs 1-35 as if fully set forth here.

37. Defendants' claims constitute a "Theft of Funds Matter" under the Policy and therefore appear to fall within the scope of coverage provided by the Theft of Funds Endorsement.

38. The Theft of Funds Endorsement provides, in relevant part, that Underwriters "will pay on behalf of an 'Insured' those sums in excess of the deductible, subject to the Sub-Limit Amount stated in Paragraph C of this Endorsement, that the 'Insured' becomes legally obligated to pay as 'Damages' and 'Claims Expenses' by reason of a 'Theft of Funds Matter'[.]"

39. The Theft of Funds Endorsement defines the term "Theft of Funds Matter" to include "a 'Claim' by reason of a 'Wrongful Act' in the performance of or failure to perform 'Professional Services' by any 'Insured' or by anyone whom an 'Insured' is legally responsible directly or indirectly related to, arising out of, or based upon: a. any alleged and/or actual comingling, theft, misappropriation, improper use of, or embezzlement of funds by any 'Insured';" and "c. the failure of an 'Insured' to perform a 'Professional Service' in relation to or arising out of a transaction involving the comingling, theft, misappropriation, knowingly improper use of or embezzlement of funds by any 'Insured'[.]"

40. The "Sub-Limit Amount" for a "Theft of Funds Matter" is $25,000, which amount is the maximum aggregate limit of liability Underwriters will pay for "Damages" or "Claims Expenses" pursuant to the Theft of Funds Endorsement, regardless of the number of "Claims" by reason of a "Theft of Funds Matter" or the number of "Insureds."

41. The $25,000 sublimit applies to limit any coverage under the Policy for a "Theft of Funds Matter" that would otherwise be provided absent the Theft of Funds Matter Endorsement.

42.     Underwriters are a neutral stakeholder as to the Interpleader Funds and face competing and adverse claims by Defendants for payment from the same limited $25,000 sublimit (including but not limited to claims styled as "Damages" and/or "Claims Expenses" allegedly within the Theft of Funds Endorsement).

43.     Defendants' claims, which constitute a single "Claim" pursuant to Section IV.2. of the Policy because they involve "Related Wrongful Acts" and "Related Claims," are adverse because each seeks recovery for itself and/or contends that its claim(s) should take priority over the others, and because the total amount sought by Defendants exceeds the Interpleader Funds.

44.     Underwriters cannot accurately determine, without judicial resolution, which Defendant(s) are entitled to receive the Interpleader Funds, in what amount(s), and on what terms.

45.     Underwriters' inability to accurately determine, without judicial resolution, which Defendant(s) are entitled to receive the Interpleader Funds, in what amount(s), and on what terms has been compounded in this instance by the lack of any assistance and cooperation by All Star Title.

46.     If Underwriters were to pay any one Defendant, Underwriters would remain exposed to suit by other Defendants contending entitlement to the same limited fund, thereby subjecting Underwriters to multiple liability, duplicative litigation, and inconsistent judgments.

47.     Statutory interpleader exists to provide a safe harbor in precisely these circumstances, i.e. where a stakeholder faces multiple adverse claims to a limited stake and seeks a single, binding adjudication of entitlement among claimants.

48.     Once the $25,000 sublimit is exhausted by payments of reasonable "Damages" and "Claims Expenses," then Underwriters will have no further obligation under the Policy in connection with the "Claim."

**PRAYER FOR RELIEF**

WHEREFORE, Underwriters respectfully request that the Court:

    a.    Allow Underwriters to deposit the Interpleader Funds with the Court in the total amount of $25,000, and direct the Clerk of the United States District Court for the Southern District of Florida to hold and maintain such amount pending this Court's further order or judgment;

    b.    Allow Underwriters, pursuant to 28 U.S.C. § 2361, to effectuate service of process on each Defendant located outside the State of Florida on such terms as the Court directs;

    c.    Assume jurisdiction over Defendants' claims pursuant to 28 U.S.C. § 1335, and enjoin the further litigation of any lawsuit now pending that seeks future recovery under the Policy in relation to the "Claim" asserted against All Star Title;

    d.    Order that the Policy affords no coverage to All Star Title or any purported Insured, including, but not limited to Margaret Jimenez, outside of the Theft of Funds Endorsement sublimit that constitutes the Interpleader Funds;

    e.    Order Defendants to interplead and litigate among themselves their respective rights to the Interpleader Funds;

    f.    Enter an order restraining and enjoining Defendants from instituting or prosecuting any action against Underwriters seeking recovery under the Policy given the interpleader filed in relation to the Interpleader Funds or otherwise pursuing the same limited proceeds of the Policy outside this case;

g.  Enter an order dismissing Underwriters from this action and discharging Underwriters from any and all further liability to Defendants, or anyone claiming through them, with respect to the Policy and the Interpleader Funds upon deposit;

h.  Grant such other and further relief as the Court deems just and proper.

Respectfully Submitted,

DATED: February 13, 2026

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON AND OTHER INSURERS SUBSCRIBING TO POLICY NO. SUA FEO 2287-2503

By: /s/ Christian W. Waugh
Christian W. Waugh
Waugh PLLC
201 E. Pine Street, Ste.315
Orlando, FL 32801
Ph.:    321-800-6008
Fax:    844-206-0245
Email: cwaugh@waugh.legal
Email: rwood@waugh.legal

and

David L. Koury (*pro hoc vice forthcoming*)
Adrian T. Rohrer (*pro hoc vice forthcoming*)
Sirjan S. Arora (*pro hoc vice forthcoming*)

BATESCAREY LLP
191 North Wacker, Suite 2400
Chicago, Illinois 60606
Firm ID: 60834
Ph.:    312-762-3100
Fax:    312-762-3200
Email: dkoury@BatesCarey.com
Email: arohrer@BatesCarey.com
Email: sarora@batescarey.com